1  STEVEN L. FRIEDLANDER (SBN 154146)
   GALEN P. SALLOMI (SBN 306743)
2  SV EMPLOYMENT LAW FIRM PC
   160 Bovet Road, Suite 401
3  San Mateo, CA 94402
   Telephone: (650) 265-0222
4  Facsimile: (650) 265-0223
   Email: sfriedlander@svelf.com
5         gsallomi@svelf.com

6  Attorneys for Plaintiff
   AMERICAN AUTOMOBILE ASSOCIATION
7  OF NORTHERN CALIFORNIA, NEVADA & UTAH

8

                    UNITED STATES DISTRICT COURT
9
                   NORTHERN DISTRICT OF CALIFORNIA
10
                      SAN FRANCISCO DIVISION
11

12  AMERICAN AUTOMOBILE ASSOCIATION        Case No. 3:20-cv-3465
     OF NORTHERN CALIFORNIA, NEVADA &
13  UTAH, a California Corporation          **PLAINTIFF'S NOTICE OF MOTION AND
                                            MOTION TO VACATE ARBITRATOR'S FINAL
14                 Plaintiff,               AWARD**

15           vs.

16  STEPHEN PANDOLF, an individual

17                 Defendant.

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page(s)

NOTICE OF MOTION AND MOTION ...................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................................2

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ...........................................2

II.     BASIS FOR FEDERAL JURISDICTION AND APPLICATION OF FAA ................2

III.    SUMMARY OF RELEVANT FACTS .......................................................................3

        A.     The Arbitration Agreement...........................................................................3

        B.     Relevant Facts as Found by the Arbitrator ..................................................3

               1.     Pandolf was an at-will employee who, like other AAA NCNU employees, was subject to its policies, which AAA NCNU took seriously. ............................3

               2.     Taylor instructs Pandolf to keep his complaints confidential with management to stop Pandolf's campaign against his office rival, Ocon, from disrupting the office. ..................................................................4

               3.     The May 18 incident, complaint, and investigation..................................4

               4.     The May 26 incident, complaint, and investigation..................................5

               5.     Lapira's investigative findings, which were found by the Arbitrator to be made and relied on in good faith, lead to the termination of Pandolf's employment.................................................................................6

        C.     The Arbitration, the Hearing, and the Parties' Extensive Briefing....................7

        D.     The Award ....................................................................................................8

IV.     LEGAL ARGUMENT ...............................................................................................10

        A.     A District Court May Vacate An Arbitration Award that Exceeds the Arbitrator's Authority by Manifestly Disregarding the Applicable Law ...............10

               1.     To Establish Liability for Pandolf's Retaliation Claim, Substantive California Law Required Him to Prove that AAA NCNU Intended to Retaliate Against Him..............................................................................12

               2.     Reliance on Investigation Results is Inconsistent with the Requirement of Retaliatory Intent .............................................................................14

        B.     The Arbitrator Exceeded His Authority and Manifestly Disregarded the Law. ................15

V.      CONCLUSION..........................................................................................................16

1

## <u>TABLE OF AUTHORITIES</u>

2
**Page(s)**

3
**Federal Cases**

4
*Biller v. Toyota Motor Corp.*,
    668 F.3d 655 (9th Cir. 2012) ..................................................................................3, 10, 11

5
*Collins v. D.R. Horton, Inc.*,
6
    505 F.3d 874 (9th Cir. 2007) ............................................................................................11

7
*Comedy Club, Inc. v. Improv West Assocs.*,
    553 F.3d 1277 (9th Cir. 2009) ....................................................................................11, 16
8

9
*Damon v. Fleming Supermarkets of Fla., Inc.*,
    196 F.3d 1354 (11th Cir. 1999) ...................................................................................8, 14

10
*Davis v. Valley Distributing Co.*,
11
    522 F.2d 827 (1977 9th Cir.) ............................................................................................9

12
*EEOC v. Total Sys. Servs.*,
    221 F.3d 1171 (11th Cir. 2000) ...................................................................................8, 14
13

14
*Fuentes v. Perskie*,
    32 F.3d 759 (3d Cir. 1994) ..............................................................................................14

15
*Johnson v. Wells Fargo Home Mortg., Inc.*,
16
    635 F.3d 401 (9th Cir. 2011) ............................................................................................11

17
*Kariotis v. Navistar Intern. Transp. Corp.*,
    131 F.3d 672 (7th Cir. 1997) ............................................................................................14
18

19
*Kropke v. Dunbar*,
    (9th Cir. 2019) 766 F.App'x 497 ......................................................................................11

20
*Lagstein v. Certain Underwriters at Lloyd's*,
21
    607 F.3d 634 (9th Cir. 2010) ......................................................................................10, 11

22
*McCoy v. WGN Continental Broadcasting Co.*,
    957 F.2d 368 (7th Cir. 1992) ............................................................................................14
23

24
*Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*,
    44 F.3d 826 (9th Cir. 1995) ........................................................................................11, 12

25
*Moyo v. Gomez*,
26
    40 F.3d 982 (1994 9th Cir.) ...........................................................................................9, 10

27
*Polimaster Ltd. v. RAE Sys., Inc.*,
    623 F.3d 832 (9th Cir. 2010) ............................................................................................11

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION
TO VACATE ARBITRATOR'S FINAL AWARD

Case No. 3:20-cv-3465

*Richey v. City of Independence,*
   540 F.3d 779 (8th Cir. 2008) ................................................................................13

*Sanchez v. Elizondo,*
   878 F.3d 1216 (9th Cir. 2018) ......................................................................10, 11

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.,*
   559 U.S. 662 (2010)..............................................................................................11

*Theis Research, Inc. v. Brown & Bain,*
   (9th Cir. 2005) 400 F3d 659 ..................................................................................2

**State Cases**

*Alamo v. Practice Management Information Corp.,*
   219 Cal.App.4th 466 (2013) ............................................................................8, 12

*Guz v. Bechtel National, Inc.,*
   24 Cal.4th 317 (2000) ....................................................................................12, 14

*Harris v. City of Santa Monica,*
   56 Cal.4th 203 (2013) ......................................................................................8, 12

*Joaquin v. City of Los Angeles,*
   202 Cal.App.4th 1207 (2012) .............................................................8, 12, 13, 14

*Jumaane v. City of Los Angeles,*
   241 Cal.App.4th 1390 (2015) ..............................................................................12

*King v. United Parcel Service, Inc.,*
   (2007) 152 Cal.App.4th 426 ..........................................................................12, 15

*Mamou v. Trendwest Resorts, Inc.,*
   165 Cal.App.4th 686 (2008) ............................................................................8, 12

*McGrory v. Applied Signal Technology, Inc.,*
   212 Cal.App.4th 1510 (2013) ..............................................................................14

*Patten v. Grant Joint Union High School Dist.,*
   134 Cal.App.4th 1378 (2005) ..............................................................................12

*Rodriguez v. American Technologies, Inc.,*
   136 Cal.App.4th 1110 (2006) ................................................................................3

*Silva v. Lucky Stores, Inc.,*
   65 Cal.App.4th 256 (1998) ..................................................................................14

*Yanowitz v. L'Oreal USA, Inc.,*
   36 Cal.4th 1028 (2005) ..............................................................................9, 10, 12

PLAINTIFF'S NOTICE OF MOTION AND MOTION
TO VACATE ARBITRATOR'S FINAL AWARD

Case No. 3:20-cv-3465

**Federal Statutes**

9 U.S.C. § 10 ........................................................................................................................2

**State Statutes**

California Business and Professions Code § 16600 ............................................................16

California Government Code § 12940(h) ............................................................................8

California Labor Code § 1102.5 .....................................................................................7, 8

PLAINTIFF'S NOTICE OF MOTION AND MOTION                    Case No. 3:20-cv-3465
TO VACATE ARBITRATOR'S FINAL AWARD

1

## <u>NOTICE OF MOTION AND MOTION</u>

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE THAT on _____, or as soon thereafter as the matter may be heard

4

in the above-entitled court, located at _____, plaintiff American Automobile Association of

5

Northern California, Nevada & Utah ("AAA NCNU") will and hereby does move for an order vacating

6

the award in arbitration in the matter of *Pandolf v. American Automobile Association of Northern*

7

*California, Nevada & Utah* (JAMS Arbitration No. 1100090828).

8

This Motion is based on this Notice of Motion and Motion, the following memorandum of points

9

and authorities, and the concurrently filed Declaration of Steven L. Friedlander, as well as any papers and

10

argument submitted to the Court before or at the hearing on this Motion.

11

12

13
Dated: May 21, 2020                                    SV EMPLOYMENT LAW FIRM PC

14

15
                                                       By: ___*/s/ Steven L. Friedlander*_____
16
                                                               Steven L. Friedlander
                                                               Galen P. Sallomi
17
                                                       Attorneys for Plaintiff
18                                                     AMERICAN AUTOMOBILE ASSOCIATION OF
                                                       NORTHERN CALIFORNIA, NEVADA & UTAH
19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION                                    Case No. 3:20-cv-3465
TO VACATE ARBITRATOR'S FINAL AWARD

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

American Automobile Association of Northern California, Nevada & Utah ("AAA NCNU") respectfully moves this Court to vacate the May 18, 2020 Final Arbitration Award (the "Award")[1] issued by arbitrator David A. Garcia (ret.) of JAMS (the "Arbitrator") in connection with the November 4-6, 2019 JAMS arbitration hearing between the parties in this matter (the "Hearing"). This motion to vacate is made pursuant to 9 U.S.C. section 10 on the grounds that the Arbitrator exceeded his powers by manifestly disregarding the applicable legal authorities presented to him in connection with the Hearing.

Specifically, because the ***Arbitrator*** made factual findings in the Award that AAA NCNU did ***not*** intend to retaliate or act in bad faith against claimant Stephen Pandolf ("Pandolf"), there can be no liability for Pandolf's claim that AAA NCNU wrongfully terminated his employment in violation of public policy. Making this determination does not require any interpretation of the facts that the Arbitrator found, or of his legal conclusions and analysis; rather, ***it accepts the Arbitrator's factual findings as true***. Thus, AAA NCNU is not arguing in this motion that the Arbitrator made an error in applying the law, or that he made a factual error in interpreting the hearing testimony. Rather, AAA NCNU is arguing that the Arbitrator (a) knew Pandolf's claims required him to show AAA NCNU intentionally retaliated against him, (b) found that AAA NCNU did not intentionally retaliate against him, and (c) manifestly disregarded the law and found AAA NCNU liable nevertheless. Thus, the Award exceeded the Arbitrator's authority and constituted a manifest disregard of applicable California law, warranting that the Award be vacated by this Court.

## II.   BASIS FOR FEDERAL JURISDICTION AND APPLICATION OF FAA

This Court has diversity jurisdiction pursuant to 28 U.S. Code § 1332 because the amount in controversy exceeds $75,000 and the parties are citizens of different states—AAA NCNU is a citizen of California and Pandolf is a citizen of Texas.  Friedlander Decl. ¶ 13.   *See Theis Research, Inc. v. Brown & Bain* (9th Cir. 2005) 400 F3d 659. Additionally, Pandolf and AAA NCNU signed an arbitration agreement (the "Arbitration Agreement") on July 1, 2011. Friedlander Decl. ¶ 2; Ex. 1. The Arbitration

---

[1] A true and correct copy of the Arbitration Award is attached as **Exhibit 2** to the Declaration of Steven L. Friedlander In Support of Plaintiff's Motion to Vacate Arbitrator's Final Award (the "Friedlander Decl.").

2

Agreement provides that it "is made under the provisions of the federal arbitration act (9 U.S.C. section 1-14) [or "FAA"] and will be construed and governed accordingly." *Id. See Biller v. Toyota Motor Corp.*, 668 F.3d 655, 662 (9th Cir. 2012) (exercising federal jurisdiction in a case where the arbitration agreement provides that the arbitration be conducted pursuant to the FAA); *see also Rodriguez v. American Technologies, Inc.*, 136 Cal.App.4th 1110, 1122 (2006) (where arbitration agreement requires that arbitration be conducted pursuant to FAA, the parties adopt the FAA to govern their arbitration).

## III.    SUMMARY OF RELEVANT FACTS

### A.    The Arbitration Agreement

The Arbitration Agreement provides that the parties shall resolve all disputes in an arbitration that "shall be conducted in accordance with the applicable employment rules of JAMS then in effect (except to the extent such rules conflict with this Agreement, in which case the terms of this Agreement will control) *and the requirements of California law* and the Federal Arbitration Act (9 U.S.C., Sections 1-14) regarding the terms and enforcement of arbitration agreements." Friedlander Decl. ¶ 2; Ex. 1 at AAA0058 (emphasis added). It also provides that the "parties may seek and be awarded any remedy in arbitration that they could receive in a court of law." *Id.* Finally, the "arbitration shall take place in San Francisco, California . . . ." *Id.* Accordingly, the Parties agreed that the arbitration shall be conducted in accordance with substantive California law.

### B.    Relevant Facts as Found by the Arbitrator

In the Award, the Arbitrator found the following facts to be true:

> **1.    Pandolf was an at-will employee who, like other AAA NCNU employees, was subject to its policies, which it took seriously.**

Pandolf started his at-will employment as an insurance agent at AAA in 1999.[2] Friedlander Decl. ¶ 3; Ex. 2 at 5. AAA NCNU's handbooks and applicable policies applied to Pandolf during his employment with AAA NCNU. *Id.* at 5. Pursuant to these policies, Pandolf was required to actually believe any complaints made by him of harassment, discrimination or retaliation, had to be truthful in making such complaints and could not make any complaints in bad faith. *Id.* He also had to participate in any AAA

---

[2] Pandolf began working for AAA NCNU after it started to operate independently on July 1, 2011. Friedlander Decl. ¶ 3; Ex. 2 at 2.

3

NCNU investigations by fully cooperating and providing truthful information. *Id.* AAA NCNU seeks to be a good corporate citizen that takes its policies and any complaints seriously, and required that Pandolf and other AAA NCNU employees acknowledge, review and sign AAA NCNU's policies (as updated). *Id.* at 6. AAA NCNU also provides appropriate resources to support such policies, including by training and investigating claims when made, as well as by having a careful process of review before making any employment decisions with respect to its employees. *Id.* Indeed, Pandolf admits that each and every time he made a complaint to AAA NCNU, there was appropriate follow up, both in terms of compensation cases and otherwise. *Id.* at 4. Pandolf also testified that he felt that he could go to management with any issues and they would listen, and that he had respect for the management team. *Id.* at 6, 7.

**2.      Taylor instructs Pandolf to keep his complaints confidential with management to stop Pandolf's campaign against his office rival, Ocon, from disrupting the office.**

In early 2017, experienced AAA NCNU manager Tracy Taylor was made the supervisor of the Redwood City branch that Pandolf worked in, in part to improve the dysfunctional relationship between Pandolf and his office rival, insurance agent Ongley "Ray" Ocon ("Ocon") caused by their competition for business. Friedlander Decl. ¶ 3; Ex. 2 at 6. Taylor and her supervisor, Regional Vice President Shawn Jones, believed that Pandolf was creating disruption in the office by involving his co-workers in his complaints against Ocon. *Id.* Taylor met with Pandolf on April 20, 2017 and instructed him to bring future complaints against Ocon to management for appropriate follow up rather than involving his uninvolved co-workers. *Id.* "Ms. Taylor and Mr. Jones believed that Pandolf had been clearly instructed to bring his complaints to Taylor and to avoid involving or communicating with any of his coworkers including those who might be witnesses, regarding any of his complaints." *Id.*

**3.      The May 18 incident, complaint, and investigation.**

On May 18, 2017, Pandolf filed an ethics hotline complaint with AAA NCNU against Ocon, advising AAA NCNU that Ocon had made a comment in the office to two female co-workers (Myla Cayco and Rebecca De La Rosa-Ang) that he was a "gynecologist giving free exams." Friedlander Decl. ¶ 3; Ex. 2 at 7. In accordance with AAA NCNU procedures, this complaint was directed to Tasha Tolbert, Vice President of People Services, who at the time was responsible for overseeing investigations in the Redwood City branch, among other responsibilities. *Id.* Tolbert assigned Tiger Lapira, AAA NCNU's HR Manager

4

then assigned to the Redwood City Branch, to investigate and follow-up on this complaint. *Id.*

Pandolf admitted that he understood that once he filed the May 18 complaint it would be improper of him to try to get a witness to support the occurrence of an event that had not occurred. *Id.* at 8. However, the day after filing his May 18 complaint, Pandolf encountered De La Rosa-Ang in the break room in the Redwood City office and discussed his perceptions of the May 18 event with her. *Id.* Pandolf secretly recorded this conversation. *Id.* at 8 n. 16. Lapira reported that in his May 31, 2017 conversation with De La Rosa-Ang, she described her May 19 conversation with Pandolf as follows:

> She ,,, asked, "Can I be completely honest?" I responded that "I would hope that she would." She confessed that Stephen pulled her aside and tried to "put things in her mind" and "makes her think things" that we[re] not true to her feelings of the situation. Stephen makes her feel uncomfortable when he tries to involve her in compiling evidence against Ray."

Friedlander Decl. ¶ 3; Ex. 2 at 8.

The Arbitrator disagreed with Lapira's conclusion regarding what had occurred in this conversation. *Id.* at 16. Specifically, he found that Pandolf was not "seeking to influence [De La Rosa-Ang's] testimony" but rather that he "was having a political discussion regarding whether De La Rosa-Ang should understand that a sexually explicit comment should be viewed as sexual harassment or as creating a hostile work environment." *Id.* The Arbitrator also found that what Pandolf "was trying to get her to believe was that the gynecologist comment was sexual harassment or inappropriate sexual innuendo and that she as a mother of a daughter should take it as such and should be offended." *Id.* at 9.

### 4.      The May 26 incident, complaint, and investigation.

On May 26, 2017, Pandolf sent an email to management complaining that he felt that his physical safety was in jeopardy because of a May 26 incident with Ocon. Friedlander Decl. ¶ 3; Ex. 2 at 9. This complaint was folded into Lapira's investigation. *Id.* The specifics of the May 26 incident were that a Spanish-speaking customer came to the front counter in the Redwood City branch and was being escorted toward Ocon by employee Marisol Moreno, at which point Pandolf intervened and said that it was not Ocon's turn to get the business. *Id.* Thereafter, Ocon said words to the effect that Pandolf should "shut his mouth" and "that's not how it works." *Id.* Pandolf responded to Ocon, saying "Don't talk to me that way" or "Don't speak to me that way." *Id.* At the time, Ocon and Pandolf were approximately 20 feet apart. *Id.* at 10. Pandolf discussed the incident with Moreno and, later that evening, sent the email to his supervisors

complaining that Ocon had made him feel that his physical safety was in jeopardy. *Id.*

During Lapira's investigation, Moreno told Lapira that it was "laughable" that Pandolf had claimed his physical safety was threatened based on the incident. *Id.* She explained to Lapira that Pandolf "was mistaken in his reporting of the incident, and that he had a tendency to view himself as a victim." *Id.* at 11. Lapira also reported that Pandolf admitted to Lapira that, contrary to his complaint, he did not feel that his physical safety was in jeopardy at the time. *Id.* at 10. Lapira concluded that Pandolf had tried to "influence Moreno's perspective on the incident by suggesting to her that it was a more serious incident than it was." *Id.* at 9, 10. The Arbitrator found that Pandolf had embellished this complaint, although he found it was not a "deliberate attempt to mislead." *Id.* at 11.

5.     **Lapira's investigative findings, which were found by the Arbitrator to be made and relied on in good faith, lead to the termination of Pandolf's employment.**

After completing his investigation, Lapira concluded that, *inter alia*, Pandolf was trying to get De La Rosa-Ang to recall or report an incident (the gynecologist comment) that De La Rosa-Ang did not believe took place.  Friedlander Decl. ¶ 3; Ex. 2 at 11-12. He also reported that Moreno, the witness to the May 26 incident, told him that it was "laughable" that Pandolf had complained about being physically threatened in the May 26 incident and that Pandolf had pulled her aside to discuss it with her and influence Moreno's perception of the events. *Id.* at 10. In addition, Lapira reported that Pandolf admitted to him that, in fact, he did not feel that his physical safety was in jeopardy at the time he made his complaint about the May 26 incident.  *Id*. at 10.  Lapira also concluded that Pandolf had received specific instructions from Taylor not to involve other team members in his disputes with Ocon and by trying to solicit support Pandolf was in violation of that instruction.  *Id*. at 10-11.  Thus, Lapira concluded that "I do not believe that all of [Pandolf's] accusations against [Ocon] are in 'good faith,' and I believe that [Pandolf] is attempting to coerce his fellow team members to corroborate his allegations." *Id.* at 11-12.

Based on her discussions with Lapira and her understanding of Lapira's findings that Pandolf had engaged in misconduct after he filed his May 18 complaint, Tolbert recommended termination of Pandolf's employment (which was a very different direction than she (and others) thought would be taken after Pandolf initially filed his May 18 complaint and Tolbert assigned the matter for investigation to Lapira with the note that "Ocon has history."). *Id.* at 11, 12. As a result, a "Termination Request" was circulated

6

by Lapira to Tolbert for follow up with her boss as well as internal legal counsel and Jones.  *Id.* Thereafter **based on the factual findings of Lapira's investigation**, Tolbert's recommendation was approved and Pandolf's employment was terminated on June 22, 2017 for misconduct, which Lapira agreed with based on his findings.  *Id.* at 12.

In connection with the termination of Pandolf's employment, **the Arbitrator found that AAA NCNU "did not intentionally retaliate against Mr. Pandolf**," although that "did not save it."  *Id.* at 16, fn. 27.  Rather, it acted on Lapira's "failure to ascertain the truth of the allegation of the gynecologist comment and on a myopic assessment of the facts" as they were disclosed to Lapira. *Id.* **Further, the Arbitrator did "not find that Mr. Lapira acted intentionally or in bad faith."** *Id.*  Rather, Lapira appeared to the Arbitrator to be "intelligent, honest, and well inclined." *Id.* While the Arbitrator did not attribute ill will to Lapira, "the Arbitrator does take issue with the conclusions expressed, and AAA's reliance on the conclusions without detached assessment."  *Id.* at 10, fn. 23.  In other words, the Arbitrator thought Lapira (and therefore AAA NCNU) got it wrong, even though Lapira (and AAA NCNU) did not have bad faith or retaliatory animus.  Thus, the Arbitrator appears to have based his decision on "but for" causation (*i.e.* Pandolf would not have been terminated absent filing the May 18 complaint) without any requirement that the termination was based on retaliatory intent.  *See id.* at 16, fn. 27 ("The necessary conclusion is that [Pandolf] … would not have been fired had he not complained of Mr. Ong's conduct.")  *See also id.* at 19 (Pandolf was terminated based on "mistaken premises").

### C. The Arbitration, the Hearing, and the Parties' Extensive Briefing

On July 6, 2018, Pandolf filed his Demand for Arbitration (the "Demand") asserting four causes of action: 1) whistleblower retaliation in violation of Labor Code § 1102.5 ("Section 1102.5"); 2) wrongful termination in violation of public policy; 3) discrimination based on national origin in violation of California's Fair Employment and Housing Act (FEHA); and 4) failure to prevent and/or correct discrimination, harassment, and retaliation in violation of FEHA. Friedlander Decl. ¶ 4; Ex. 3. On the first day of the arbitration hearing, Pandolf dismissed his discrimination claims. Friedlander Decl. ¶ 3; Ex. 2 at 2 fn. 3.

The parties submitted extensive pre- and post-hearing briefing which discussed the applicable legal standards, including all of the cases cited and discussed in sections IV(A)(1) and  IV(A)(2), *supra*. Both

parties explained to the Arbitrator the substantive legal requirement under California law that, as discussed in section IV(A)(1), *supra*, "[f]or retaliation claims, '[t]he central issue is and should remain whether the evidence as a whole supports a reasoned inference that the challenged action was the product of discriminatory or retaliatory animus.'" Friedlander Decl. ¶ 6; Ex. 5 at 8 (AAA NCNU's pre-hearing brief, citing *Mamou v. Trendwest Resorts, Inc.*, 165 Cal.App.4th 686, 715 (2008), *Alamo v. Practice Management Information Corp.*, 219 Cal.App.4th 466, 479 (2013) and *Harris v. City of Santa Monica*, 56 Cal.4th 203, 232 (2013)). *Accord* Friedlander Decl. ¶ 7; Ex. 6 at 4 (Pandolf's pre-hearing brief, stating that Pandolf can only prevail if he shows that his "reporting harassment via the AAA [NCNU] ethics hotline was a substantial motivating reason for AAA[ NCNU]'s decision to discharge Stephen Pandolf.").

AAA NCNU also extensively briefed cases stating that, as discussed in section IV(A)(2), *supra*, for retaliation claims, the "relevant inquiry is whether [the employer] **believed** [the employee] was guilty of conduct justifying discharge." Friedlander Decl. ¶ 10; Ex. 9 at 5 (citing *Joaquin v. City of Los Angeles*, 202 Cal.App.4th 1207, 1223 (2012) (emphasis in original)). Accordingly, "[a]n employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for [retaliatory] conduct." *Id.* (citing *EEOC v. Total Sys. Servs.*, 221 F.3d 1171, 1176 (11th Cir. 2000) and *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354 (11th Cir. 1999)).

### D. The Award

The Arbitrator issued the Final Award on May 18, 2020. Friedlander Decl. ¶ 3; Ex. 2. The Award was based solely on Pandolf's claim for wrongful termination in violation of public policy. The Arbitrator did not "undertake a separate assessment of whether Labor Code Section 1102.5 has been violated, deeming it only necessary to assess the violation of Public Policy." *Id.* at 14, fn. 26. As noted above, Pandolf had dismissed his third claim for discrimination on the first day of the arbitration hearing[3]. Finally, the Award did not rule in favor of Pandolf on his fourth claim for failure to prevent discrimination, retaliation or harassment (although the Arbitrator's factual findings with respect to AAA NCNU's strong policies and practices undermine this claim).

---

[3] The Award stated that Pandolf "did not dismiss his retaliation claim based on having engaged in activity protected by FEHA." Friedlander Decl. ¶ 3; Ex. 2 at 14 fn. 26. Respondent interprets the Arbitrator's statements to mean that it was the Arbitrator's view that FEHA provided a public policy basis for the protected conduct at issue with Pandolf's wrongful termination in violation of public policy claim, which the Arbitrator stated is "necessarily a finding as regards Government Code Section 12940(h)." *Id.*

8

1    Notably, as stated above, based on the ***Arbitrator's*** findings in the Award, the evidence did not

2  support that AAA NCNU had a retaliatory animus toward Pandolf, AAA NCNU had good processes and

3  policies in place, and Lapira, the investigator who AAA NCNU relied upon in making its termination

4  decision, was intelligent, well intentioned and honest.  Rather, the Arbitrator disagreed with Lapira's

5  conclusions because he found that Lapira had been misled by witnesses who may not have been truthful

6  when being interviewed and that Lapira made an "early conclusion" that Pandolf was interfering with the

7  investigation, violating his supervisor's instructions, and filing complaints in bad faith. Specifically, the

8  Arbitrator "concludes that the [gynecologist] comment was made, notwithstanding Mr. LaPira's findings."

9  *Id.* at 9 fn. 18.[4] The Award explained that:

10         The Arbitrator does not find that Mr. LaPira acted intentionally or in bad faith. He
           appears to the Arbitrator to be intelligent, honest, and well inclined. However, Mr.
11         LaPira appears to have reached an early conclusion and then to have pursed his
           investigation in such a way that he inevitably discovered or interpreted information
12         as supporting his conclusion. The open-minded investigator always keeps an open
           mind and as AAA [NCNU] posits follows the facts and only after hearing all the
13         facts and assessing them comes to a conclusion. AAA [NCNU] acted on Mr.
           LaPira's failure to ascertain the truth of the allegation of the gynecologist comment
14         and on a myopic assessment of the facts as they were disclosed to Mr. LaPira. ***That
           it did not intentionally retaliate against Mr. Pandolf does not save it***.

15

16  *Id.* at 16 fn. 27 (emphasis added).

17    The Award did not address any of the cases cited and discussed by the parties, including those cases

18  discussed in sections IV(A)(1) and  IV(A)(2), *supra*, which universally hold that a plaintiff must prove

19  intentional and retaliatory bias by an employer to establish liability for wrongful discharge in violation of

20  public policy.  Instead, the Award only cited three cases in toto, all purportedly for the proposition that a

21  claim for retaliation in violation of FEHA or Title VII may survive dismissal or summary judgment if an

22  employee was fired because he complained of conduct that he "reasonably believes to be discriminatory,

23  even when a court later determines the conduct was not actually prohibited . . . ." *Id.* at 15 (*citing Yanowitz

24  v. L'Oreal USA, Inc.*, 36 Cal.4th 1028 (2005), *Moyo v. Gomez*, 40 F.3d 982, 985 (1994 9th Cir.), and *Davis

25  v. Valley Distributing Co.*, 522 F.2d 827 (1977 9th Cir.)[5]).   The issue of whether or not Pandolf's May 18

26  _____

27  [4] Whether or not Pandolf made the comment is, of course, irrelevant.  The termination by AAA NCNU
    was based on Lapira's findings of misconduct by Pandolf *after* he made the May 18 complaint.

28  [5] It is unclear why the Arbitrator cited *Davis*, as that case involved the statute of limitations for actions
    pursuant to Title VII of the Civil Rights Act of 1964 for a claim involving religious discrimination and
    does not discuss whether an employee must show that the employer intentionally retaliated against him.

9

complaint constituted protected conduct, however, was not at issue.  Further, the Award did not address the portions of these cases noting that an employee has the burden "to prove intentional retaliation." *Yanowitz*, 36 Cal.4th at 1042. *See also Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994) (same).  Instead, the Arbitrator found "that FEHA does not require a finding of intentional retaliation" even though every single authority cited by both parties clearly showed that it does.  Friedlander Decl. ¶ 3; Ex. 2 at 20.

In the Award, ***even though the Arbitrator did <u>not</u> find that bad faith or intentional retaliation motivated (let alone substantially motivated) the termination of Pandolf's employment—which is a necessary and fundamental element of liability under California law***—the Arbitrator nevertheless found that AAA NCNU had wrongfully terminated Pandolf's employment in violation of public policy, awarding damages of $1,500,000, post-judgment interest and attorneys' fees and costs of $216,447.85.

## IV.   LEGAL ARGUMENT

### A.   A District Court May Vacate An Arbitration Award that Exceeds the Arbitrator's Authority by Manifestly Disregarding the Applicable Law

A district court may "make an order vacating the award upon the application of any party to the arbitration . . . (4) where the arbitrators exceeded their powers . . . ." 9 U.S.C. § 10.[6] As the Ninth Circuit has explained, "[t]he FAA imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion.' '[T]he parties' intentions control . . . because an arbitrator derives his or her powers from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution.'" *Sanchez v. Elizondo*, 878 F.3d 1216, 1221-1222 (9th Cir. 2018). An arbitrator exceeds his authority "where the arbitration decision fails to draw its essence from the agreement." *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 665 (9th Cir. 2012) (citations omitted). *See also Lagstein v. Certain Underwriters at Lloyd's*, 607 F.3d 634, 643 (9th Cir. 2010) ("arbitrators exceed their powers for purposes of § 10(a)(4) when they act outside the scope of the parties' contractual agreement."

---

[6] Specifically, the FAA provides that courts may vacate an arbitration agreement:
1) where the award was procured by corruption, fraud, or undue means;
2) where there was evident partiality or corruption in the arbitrators, or either of them;
3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(citations omitted)). This standard applies equally "to the arbitrator's interpretation of matters of procedure in the contract as well as matters of substance." *Id; see also Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 836 (9th Cir. 2010). Accordingly, an arbitration award may be vacated when an "arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' . . . ." *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) (citations omitted).

Here, the arbitration agreement provides that the parties shall resolve all disputes in an arbitration that "shall be conducted in accordance with the applicable employment rules of JAMS then in effect (except to the extent such rules conflict with this Agreement, in which case the terms of this Agreement will control) ***and the requirements of California law*** and the Federal Arbitration Act (9 U.S.C., Sections 1-14) regarding the terms and enforcement of arbitration agreements." Friedlander Decl. ¶ 2; Ex. 1 at AAA0058 (emphasis added). It also provides that the "parties may seek and be awarded any remedy in arbitration that they could receive in a court of law." *Id.* Finally, the "arbitration shall take place in San Francisco, California . . . ." *Id.* The plain language of the Arbitration Agreement is unambiguous and shows the parties' intent that the Arbitrator was to apply substantive California law. *See generally Biller*, 668 F.3d 655.

If an arbitrator manifestly disregards the applicable substantive law—here, California law per the Arbitration Agreement—the Ninth Circuit has held that an arbitration award can be vacated.[7] *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009). An arbitrator manifestly disregards the law when he "recognized the applicable law and then ignored it." *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995). Manifest disregard of the law is a "high standard . . . ." *Sanchez* 878 F.3d at 1221 (citing *Lagstein*, 607 F.3d at 641). This is "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand and apply the law." *Collins v. D.R. Horton, Inc.* 505 F.3d 874, 879 (9th Cir. 2007). To vacate an arbitration award under this standard "[i]t must be clear from the record that the arbitrator[] recognized the applicable law and then ignored it." *Id.* Moreover, to rise to the level of manifest disregard "[t]he governing law alleged to have been ignored by the arbitrator[] must be well defined, explicit, and clearly applicable." *Kropke v. Dunbar* (9th Cir. 2019)

---

[7] "Although the words manifest disregard for law do not appear in the FAA, they have come to serve as a judicial gloss on the standard for vacatur set forth in FAA § 10(a)(4)." *Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 414 (9th Cir. 2011).

766 F.App'x 497, 500. *See also Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995).

1.      **To Establish Liability for Pandolf's Retaliation Claim, Substantive California Law Required Him to Prove that AAA NCNU Intended to Retaliate Against Him**

It is undisputed by the parties that an employee can only prevail on a retaliation claim if the adverse action was substantially motivated by a retaliatory animus towards the employee, *i.e.* if AAA NCNU intended to retaliate against Pandolf when terminating his employment. Friedlander Decl. ¶ 6-11; Exs. 5-10. Indeed, every case the parties presented to the Arbitrator and that the Arbitrator relied upon notes that, in a claim for retaliation, the plaintiff must show that the employer's motive to terminate employment was based on retaliatory animus. *See, e.g.*, Friedlander Decl. ¶ 8; Ex. 7 (citing *Joaquin*, 202 Cal.App.4th 1207; *Mamou*, 165 Cal.App.4th 686; *Yanowitz*, 36 Cal.4th 1028; *Patten v. Grant Joint Union High School Dist.*, 134 Cal.App.4th 1378 (2005); *Alamo*, 219 Cal.App.4th 466; *Harris*, 56 Cal.4th 203; *Guz v. Bechtel National, Inc.*, 24 Cal.4th 317 (2000); *King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426; and *Jumaane v. City of Los Angeles*, 241 Cal.App.4th 1390 (2015)). *See also* Friedlander Decl. ¶ 5; Ex. 4.

As stated to the Arbitrator at the hearing, the "central issue [in retaliation cases] is and should remain whether the evidence as a whole supports a reasoned inference that the ***challenged action was the product of discriminatory or retaliatory animus***." *Joaquin*, 202 Cal.App.4th at 1226 (emphasis added). In *Joaquin*, the employee filed a complaint for sexual harassment and the employer, like AAA NCNU, conducted an internal investigation which concluded that the employee had committed misconduct in violation of workplace rules, and terminated the employee. *Id.* at 1225. The trial court instructed the jury that it was enough to find that the employee was terminated because of the employee's complaint but did not instruct the jury that it needed to find that the employer intentionally retaliated against the employee. *Id.* at 1230.

The Court of Appeal reversed and critiqued the CACI jury instructions used, stating that "[a]s we have noted, retaliatory intent is an essential element of a cause of action for unlawful retaliation under FEHA. However, that element is not identified in the CACI retaliation instruction.  In the present case, where intent was a significant issue, the omission was material. . . . We urge the Judicial Council to redraft the retaliation instruction and the corresponding special verdict form so as to clearly state that

12

retaliatory intent is a necessary element of a retaliation claim under FEHA." *Id.* at 1230-1231. The Court of Appeal held that the employer was not liable because it conducted a good faith internal investigation and terminated the employee, irrespective of whether the employee had filed the sexual harassment complaint in good faith or whether the complaints were ultimately found by a court to be legitimate. *Id.* The court explained that, "***if an employer honestly believes that an employee is terminated for misconduct, but it turns out later that the employer was mistaken about whether the employee violated a workplace rule, the employer cannot be liable.***" *Id.* (emphasis added).

Thus, if an employer, like AAA NCNU, "takes an adverse action based on a good faith belief that an employee engaged in misconduct, then the employer has acted because of perceived misconduct, not because of protected status or activity." *Id.* The court explained that the "relevant inquiry is whether [the employer] ***believed*** [the employee] was guilty of conduct justifying discharge." *Id.* (emphasis in original).

> An employer is forbidden to discriminate against an employee who participates in an investigation of employment discrimination. But participation doesn't insulate an employee from being discharged for conduct that, if it occurred outside an investigation, would warrant termination. [Citations.] This includes making frivolous accusations, or accusations grounded in prejudice. For it 'cannot be true that a plaintiff can file false charges, lie to an investigator, and possibly defame co-employees, without suffering repercussions simply because the investigation was about sexual harassment. To do so would leave employers with no ability to fire employees for defaming other employees or the employer through their complaint.

*Id.*

Therefore, an employee like Pandolf must prove more than that he reasonably believed that he was reporting sexual harassment; he must show that the "employer acted based on an intent to retaliate rather than on a good faith belief that the employee" engaged in misconduct. *Id.* (citing *Richey v. City of Independence*, 540 F.3d 779 (8th Cir. 2008)).

Here, as discussed above, the Arbitrator found that AAA NCNU "did ***not*** intentionally retaliate against Mr. Pandolf". Friedlander Decl. ¶ 3; Ex. 2 at 13, fn. 22. *See* section III(D), *infra*. Because the Award found that AAA NCNU had no retaliatory animus towards Pandolf, ***AAA NCNU cannot be liable for retaliation claims under California law***. Nevertheless, the Arbitrator found against AAA NCNU on Pandolf's retaliation claim, manifestly disregarding well-defined, explicit and clearly applicable California law pertaining to retaliation.

13

### 2. Reliance on Investigation Results is Inconsistent with the Requirement of Retaliatory Intent

As a corollary to the rule that employers are only liable when they intentionally retaliate against an employee, courts hold that so long as they are acting in good faith when relying on an investigation, employers are not required to make employment decisions based on the same level of certainty as would be required in a court of law. *EEOC v. Total Sys. Servs.*, 221 F.3d 1171, 1176 (11th Cir. 2000). *See also Guz*, 24 Cal.4th 317. The court explained in *Total Systems* that not every personnel decision "involving a false statement (or a cover-up) has to be treated as something like a trial for perjury. Therefore, an employer, in these situations, ***is entitled to rely on its good faith belief about falsity, concealment, and so forth***." *Id.* (emphasis added.) "An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct." *Id.* (citing *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354 (11th Cir. 1999)).

This rule is supported by California cases that AAA NCNU cited to the Arbitrator and were disregarded in the Award. *See*, Friedlander Decl. ¶ 8; Ex. 7 (*citing Guz*, 24 Cal.4th 317; *McGrory v. Applied Signal Technology, Inc.*, 212 Cal.App.4th 1510, 1535 (2013) (rejecting employee's arguments that investigator was biased against him); *Silva v. Lucky Stores, Inc.* 65 Cal.App.4th 256, 263-64 (1998) (finding investigation adequate as a matter of law); and *Joaquin*, 202 Cal.App.4th at 1223 (same)). For example, in *Guz*, the California Supreme Court reversed the Court of Appeal and explained that an employer's nondiscriminatory reasons for termination "need not necessarily have been wise or correct." *Guz*, 24 Cal.4th 317. The Court held that summary judgment was appropriate, even where the employer's reasons for termination were based on inaccurate information, "the ultimate issue is simply whether the employer acted with a motive to discriminate illegally." *Id.* (*citing Kariotis v. Navistar Intern. Transp. Corp.* 131 F.3d 672, 676 (7th Cir. 1997) (suggesting that proffered reasons, if "nondiscriminatory on their face" and "honestly believed" by employer, will suffice even if "foolish or trivial or baseless"); *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 373 (7th Cir. 1992) (ultimate issue is whether employer "honestly believed in the reasons it offers"); and *Fuentes v. Perskie* 32 F.3d 759, 765 (3d Cir. 1994) (issue is discriminatory animus, not whether employer's decision was "wrong or mistaken," or whether employer is "wise, shrewd, prudent, or competent")).

The *King* case is particularly instructive and, although it was presented to the Arbitrator, it was

14

1  ignored in the Award. *See* Friedlander Decl. ¶ 10; Ex. 9 at 5-6 (*citing King* 152 Cal.App.4th 426). There,

2  the plaintiff was a long-time employee of UPS who was terminated for participating in timecard fraud

3  shortly after returning from disability leave, with the plaintiff raising claims of disability discrimination

4  and breach of the implied covenant of good faith and fair dealing. *King* 152 Cal.App.4th 426. The court

5  affirmed the trial court's grant of summary judgment to employer UPS. As stated by the court, the key

6  issue was whether the employee was terminated because he was disabled and "***it does not matter whether***

7  ***plaintiff actually did commit an integrity violation as long as UPS honestly believed he did***." *Id.* at 433

8  (emphasis added). The court also found that the inference of discrimination was "particularly weak" when

9  considered in the context of UPS's prior conduct toward plaintiff. *Id.* at 436. Finally, the misconduct had

10  been investigated internally by UPS, with the termination based on the investigation. *Id.* While the plaintiff

11  argued that "flaws" in the investigation pointed to bad faith, the court found that because "neutral personnel

12  investigated the facts, eyewitnesses provided statements, and plaintiff was given an opportunity to explain

13  what happened, we conclude UPS conducted an adequate investigation as a matter of law." *Id.* 440.

14  All of these factors were present with respect to the investigation and termination of Pandolf's

15  employment, as recognized by the Arbitrator himself in the Award; the Arbitrator also made a finding of

16  good faith. However, the Arbitrator questioned the results of the investigation in his Award, rather than the

17  honest, good faith belief of the investigator and AAA NCNU in determining whether AAA NCNU

18  retaliated against Pandolf. Indeed, the Arbitrator applies an inappropriate negligence standard to Lapira's

19  investigation and AAA NCNU's reliance on that investigation in terminating Pandolf's employment. By

20  doing so, the Arbitrator confused "but for" causation with the required intent, and expressly disavowed

21  (and certainly manifestly disregarded) the established California law presented to him, stating: "The

22  Arbitrator finds that FEHA ***does not require*** a finding of intentional retaliation." *Id*. at 20-21 (emphasis

23  added).

24  **B.     The Arbitrator Exceeded His Authority and Manifestly Disregarded the Law.**

25  AAA NCNU cited each and every case discussed in sections IV(A)(1) and IV(A)(2), *infra* to the

26  Arbitrator in its pre-hearing and post-hearing briefs. *See* Friedlander Decl. ¶ 6-11; Exs. 5-10. These cases

27  and the applicable legal principals were discussed extensively in pre- and post-Hearing briefing. *Id.* Indeed,

28  the Arbitrator acknowledged that he had "heard and examined the submissions, proofs and allegations of

PLAINTIFF'S NOTICE OF MOTION AND MOTION                                    Case No. 3:20-cv-3465
TO VACATE ARBITRATOR'S FINAL AWARD

the Parties" and that "[t]he legal authorities relied upon are principally those cited by the parties." Friedlander Decl. ¶ 3; Ex. 2 at 1. Accordingly, the Arbitrator was aware of the well-defined, explicit, and clearly applicable California law stating that a claim for wrongful termination in violation of public policy cannot stand unless the fundamental element of intentional retaliation against the employee is met.  Thus, because the Arbitrator made factual findings that AAA NCNU did ***not*** intend to retaliate against Pandolf, there can be no liability for Pandolf's claim that AAA NCNU violated public policy by retaliating against him, and the Arbitrator manifestly disregarded the law and exceeded his authority by finding otherwise in the Award.

In *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277 (9th Cir. 2009), the Ninth Circuit held that "an arbitrator's manifest disregard of the law remains a valid ground for vacatur of an arbitration award under § 10(a)(4) of the Federal Arbitration Act." *Id.* at 1281. The arbitrator in that case had entered an anti-competitive order granting injunctive relief in violation of California Business and Professions Code § 16600. *Id.* at 1287. The Ninth Circuit reversed the trial court and held that the award should have been vacated because the arbitrator exceeded his authority by issuing an award that violated California law. *Id.* at 1288. Here too, the Arbitrator issued an award that ignored a foundational element of Pandolf's retaliation claim—intentional retaliation—and the Award thus was contrary to, and in manifest disregard of, the substantive California law to be applied per the parties' Arbitration Agreement.

## V.    CONCLUSION

For the aforementioned reasons, AAA NCNU respectfully requests that its motion to vacate be granted and the Award be vacated.


Dated: May 21, 2020                          SV EMPLOYMENT LAW FIRM PC


By:    */s/ Steven L. Friedlander*
                                        Steven L. Friedlander
                                        Galen P. Sallomi

Attorneys for Plaintiff
AMERICAN AUTOMOBILE ASSOCIATION OF
NORTHERN CALIFORNIA, NEVADA & UTAH